IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DIANA PEREZ; LORI PERRITT; ANTHONY
GUNN; FRANK VAVPOTIC; STEVE JOHNSON;
CANDACE JEFFRIES; TARA HRACHOVY;
LESLIE ARTHUR; and JEFFREY HARMAN,
on behalf of themselves and all others similarly situated                      PLAINTIFFS

v.                                    Case No. 2:12-CV-02289

VOLKSWAGEN GROUP OF AMERICA, INC.                                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Volkswagen Group of America, Inc.'s ("Volkswagen") Motion to Dismiss Class Action Complaint (Doc. 14) and Brief in Support (Doc. 15). Plaintiffs failed to file a response in opposition.

The Complaint in this case is similar to the one filed in *White v. Volkswagen Group of America, Inc.*, 2013 WL 685298 (W.D. Ark. Feb. 25, 2013), a purported class action that the Court dismissed on February 25, 2013, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and for improper venue pursuant to 28 U.S.C. § 1406(a). The *White* case involved a number of plaintiffs from different states who alleged, on behalf of themselves and those similarly situated, that the transmission systems in their New Beetle automobiles were defective. Here, Plaintiffs assert the same transmission defect as was claimed in *White*. They also bring the same common-law claim for breach of express warranty on behalf of a purported nationwide class, as did the plaintiffs in *White*. In sum, it appears to the Court that although different Plaintiffs have been substituted for those in *White*, the instant Complaint in all material respects is identical to the one dismissed in *White*.

-1-

## I. Background

Separate Plaintiffs Diana Perez of Arkansas, Lori Perritt of Tennessee, Anthony Gunn of Ohio, Frank Vavpotic of Illinois, Steve Johnson of California, Candace Jeffries of Georgia, Tara Hrachovy of Texas, Leslie Arthur of Connecticut, and Jeffrey Harman of Maryland filed a class action Complaint (Doc. 1) on behalf of themselves and all others similarly situated on November 21, 2012. The Complaint alleges that New Beetle automobiles manufactured by Defendant from model years 2003-2007 contain design and/or manufacturing defects that cause "hard shifting," or difficult and unpredictable shifting into gear during normal driving. Plaintiffs contend that over time, this hard-shifting defect necessitates repair and/or replacement of the subject vehicles' transmission systems, at a cost of several thousand dollars per vehicle.

Plaintiffs further maintain that this transmission defect was present in each of their New Beetles since the date of manufacture. They assert that Defendant was aware of the defect at the time these vehicles were first sold, but failed to disclose the defect to Plaintiffs. Accordingly, Plaintiffs argue that their vehicles' transmission systems were damaged during the relevant warranty periods offered by Defendant.

At the time that Plaintiffs' New Beetles were originally manufactured and sold, there were two warranties in effect that covered repair or replacement of the transmission systems. The first was the Limited New Vehicle Warranty, which generally covered the cost of any repairs or defects for four years or 50,000 miles, whichever came first. The second was the Limited Powertrain Warranty, which covered particular defects, including transmission defects, for five years or 60,000 miles, whichever came first. For all Plaintiffs, the coverage period of the Limited Powertrain

Warranty overlapped with and exceeded the coverage period of the Limited New Vehicle Warranty.[1]

In November of 2010, Defendant began mailing letters to owners and lessees of New Beetles from model years 2003-2007, stating, "Volkswagen has received customer complaints of affected vehicles that may experience a hard shift from first to second gear, and also from second to third gear." (Doc. 1-12). According to Plaintiffs, Defendant offered to extend the warranty covering the valve body in the transmission system for seven years from the date of manufacture or 100,000 miles, whichever came first, because Defendant recognized and admitted that a transmission defect existed. The extended valve body warranty offered by Defendant did not, however, cover replacement of the entire transmission system in each affected vehicle, but rather was limited to "the diagnosis and repair of the transmission valve body."[2] *Id.*

Plaintiffs allege that defects in their vehicles' transmission valve bodies must have caused damage to their entire transmission systems. All Plaintiffs now bring a common-law claim for breach of express warranty, individually and on behalf of a nationwide class of others similarly situated. In addition, Plaintiff Perez of Arkansas asserts, on behalf of herself and a class of Arkansas New Beetle owners and lessees, claims for breach of the implied warranty of merchantability, strict liability for design defect, strict liability for defective manufacture, negligence, and violations of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, *et seq.* Plaintiff Johnson of California asserts, on behalf of himself and a class of California New Beetle owners and lessees, a

---

[1]Because the Limited Powertrain Warranty is the most inclusive warranty for all Plaintiffs, the Court will refer only to the Limited Powertrain Warranty (hereinafter "Warranty") when discussing warranty coverage for Plaintiffs' vehicles.

[2]This 2010 warranty extension for repair or replacement of the valve body did not cover repair or replacement of the entire transmission system. Thus, the warranty extension did not supersede the Warranty's coverage.

claim pursuant to the California Consumer Legal Remedies Act, Cal. Civil Code § 1750, *et seq.*, and

a claim pursuant to California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

Plaintiff Perritt of Tennessee asserts, on behalf of herself and a class of Tennessee New Beetle

owners and lessees, a claim pursuant to Tennessee's Consumer Protection Act, Tenn. Code Ann.

§ 47-18-103, *et seq.*  Plaintiff Gunn of Ohio asserts, on behalf of himself and a class of Ohio New

Beetle owners and lessees, a claim pursuant to the Ohio Deceptive Trade Practices Act, Ohio Rev.

Code Ann. § 4165.01, *et seq.*  Plaintiff Vavpotic asserts, on behalf of himself and a class of Illinois

New Beetle owners and lessees, a claim pursuant to the Illinois Consumer Fraud Act, 815 Ill. Comp.

Stat. Ann. § 505.  Plaintiff Jeffries asserts, on behalf of herself and a class of Georgia New Beetle

owners and lessees, a claim pursuant to the Georgia Fair Business Practices Act, Ga. Code Ann.

§ 10-1-392, *et seq.*  Plaintiff Hrachovy asserts, on behalf of herself and a class of Texas New Beetle

owners and lessees, a claim pursuant to the Texas Deceptive Trade Practices Act,  Tex. Bus. & Com.

Code Ann. § 17.46.  Plaintiff Arthur asserts, on behalf of herself and a class of Connecticut New

Beetle owners and lessees, a claim pursuant to the Connecticut Unfair Trade Practices Act, Conn.

Gen. Stat. Ann. § 42-110, *et seq.*  Lastly, Plaintiff Harman asserts, on behalf of himself and a class

of Maryland New Beetle owners and lessees, a claim pursuant to the Maryland Consumer Protection

Act, Md. Code Ann. § 13-101, *et seq.*

## II.  Legal Standard

In ruling on a motion to dismiss, the Court accepts as true all of the factual allegations

contained in a complaint and reviews the complaint to determine whether its allegations show that

the pleader is entitled to relief.  *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir.

2008).  All reasonable inferences from the complaint must be drawn in favor of the non-moving

party.  *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004).
Complaints should be liberally construed in the plaintiff's favor and "should not be dismissed for
failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in
support of his claim which would entitle him to relief." *Rucci v. City of Pacific*, 327 F.3d 651, 652
(8th Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Nevertheless, "a complaint
must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on
its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Pleadings that contain mere "labels and
conclusions" or "a formulaic recitation of the elements of the cause of action will not do." *Bell
Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2009).  "The plausibility standard is not akin to a
'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted
unlawfully." *Iqbal*, 556 U.S. at 678.

## III. Discussion

Named plaintiffs who represent a class "must allege and show that they personally have been
injured, not that injury has been suffered by other, unidentified members of the class to which they
belong and which they purport to represent."  *Warth v. Seldin*, 422 U.S. 490, 502 (1975).
Accordingly, the Court will begin by analyzing whether the individual claims of Plaintiff Perez of
Arkansas are subject to dismissal.

### A.  Plaintiff Perez

Perez is not the original owner of either of her two 2004 New Beetles.  She purchased one
New Beetle in early 2012 (hereinafter "Vehicle 1") but does not disclose in the Complaint the
vehicle's odometer reading at the time she purchased it.  Perez claims that Vehicle 1 currently has
114,000 miles on it and started "experiencing transmission issues" two weeks after she became its

owner.  (Doc. 1, para. 5).  Perez's second 2004 New Beetle (hereinafter "Vehicle 2") is mentioned in the Complaint, but not fully described.  Perez does not state the date she purchased Vehicle 2, nor does she reveal the odometer reading at the time she purchased it.  Fortunately, however, the public records[3] of the Arkansas Department of Motor Vehicles informs the Court that Perez purchased Vehicle 2 from a prior owner on September 21, 2010, "as is," with an odometer reading of 105,463 miles. (Doc. 14-6).  The five-year/60,000 mile Warranty covering the transmission systems in Vehicles 1 and 2 had expired long before Perez became the vehicles' owner.

Perez contends that shortly after she purchased Vehicle 1 from its prior owner, the vehicle "would buck and hesitate when [she] would attempt to accelerate, and its driving performance became erratic, unpredictable, and unsafe because the vehicle would lurch and buck rather than shift into or out of gears." (Doc. 1, para. 5).  Perez took Vehicle 1 to her mechanic, who told her that the car required a new transmission due to a defective valve body.  Perez was quoted a repair cost of $4,000 by her mechanic; however, she does not assert that her mechanic is an authorized Volkswagen dealer or that she actually paid to have the transmission system repaired.

With regard to Vehicle 2, Perez began experiencing "hard transmission shifting, slipping, and bucking issues" and "resorted to parking and garaging [Vehicle 2], rather than risk the unsafe driving experience involved in driving the vehicle."  *Id.*  Perez does not allege she took Vehicle 2 to an authorized Volkswagen dealer or to her own mechanic to diagnose the claimed transmission problem and/or have it repaired.

---

[3]The Court is permitted to consider matters of public record, as well as the pleadings themselves, materials embraced by the pleadings, and exhibits attached to the pleadings, in ruling on a motion to dismiss.  *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011).

### 1.  Count I: Breach of Express Warranty

The Court observes initially that Perez, by her own admission, became the owner of both Vehicles 1 and 2 well after the applicable five-year/60,000 mile Warranty periods had expired on both vehicles.  The 2004 Warranty states:

> The Limited Powertrain Warranty is automatically transferred without cost if the ownership of the vehicle changes within the Warranty period.

(Doc. 14-3, p. 10).

Because the ownership of Vehicles 1 and 2 was not transferred to Perez within the relevant Warranty period, Perez was not covered under the Warranty when she experienced transmission problems, either for Vehicle 1 or Vehicle 2.  Accordingly, her breach of warranty claim is subject to dismissal on this basis.

Perez also fails to plead that she relied upon the clearly expired 2004 Warranty in making the decision to purchase her substantially used vehicles.  According to Arkansas law, this failure to plead that she relied on the Warranty as the basis of her bargain is fatal to her express warranty claim.  *See Ciba-Geigy Corp. v. Alter*, 309 Ark. 426, 447 (1992) ("When a buyer is not influenced by the [terms of an express warranty] in making his or her purchase, the [warranty] is not a basis of the bargain."); *Brooks v. Remington Arms Co., Inc.*, 2010 WL 6971894 at *5 (W.D. Ark. Oct. 2010) ("[T]he Arkansas Supreme Court directly addressed this issue and held that reliance is an essential element of an express warranty claim.").  Even if Perez had  affirmatively pleaded reliance, such a pleading would have been implausible, as by the plain terms of the Warranty, Perez became the owner of both Vehicles 1 and 2 after the Warranty had expired.

Lastly, the Court addresses Perez's attempt to avoid the application of the Warranty's time and mileage limitations by arguing that they are procedurally and substantively unconscionable.  Her argument is that Defendant knew that a latent defect was present in the transmission systems of all 2003-2007 New Beetles at the time that these vehicles were advertised and sold to the public.  Perez further contends that "[t]he nature of the transmission defects are such that they were known to Defendant but were not and could not have been known to, or discovered by, class members upon reasonable inspection of the vehicles prior to purchase."  (Doc. 1, para. 56).

Perez's attempt to extend the coverage of her expired Warranty by making an unconscionability argument is unavailing.  Her vague assumption, unsupported by any factual allegation, that Defendant must have had pre-sale knowledge of the transmission defect due, in general, to its  "superior knowledge about the quality of the vehicles" and role as "sole issuer of the express warranty covering the subject vehicles" fails to meet the pleading standards set forth in *Twombly*.  550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Moreover, "[w]hether a contract is unconscionable must be determined in light of the general commercial background, commercial needs in the trade or particular case, the relative bargaining position of the parties, and other circumstances at the time the contract was made." *Hunter v. Texas Instruments, Inc.*, 798 F.2d 299, 303 (8th Cir. 1986).  In determining whether a contract is unconscionable, a court must review the totality of the circumstances surrounding the negotiation and execution of the contract to ascertain whether gross inequality of bargaining power existed between the parties.  *State ex rel. Bryant v. R&A Inv. Co.*, 336 Ark. 289, 296 (1999).

Here, the Court cannot begin to analyze the unconscionability of the Warranty with respect to Perez because Perez was not a party to the original 2004 Warranty, nor was she ever covered by

the Warranty's transfer provision.  Perez has no standing to argue that she was injured due to the alleged unconscionability of the Warranty, and furthermore, she is not in a position to hypothesize about the circumstances surrounding the negotiation and execution of the original contracts of sale for Vehicles 1 and 2.  She cannot speak to the relative bargaining positions of the former owners of her vehicles, who, in fact, were in privity of contract with Defendant.  Perez's bargaining power in relation to Defendant's is therefore immaterial, as Perez purchased her two used vehicles knowing that the Warranty had already expired on both.

Taking Perez's unconscionability argument to its logical conclusion, it appears that she would be in favor of allowing any New Beetle owner to make a transmission claim on the Warranty at any time, regardless of the number of years of use or number of miles registered on a vehicle's odometer.[4]  Defendant, however, is not required to warrant its vehicles forever.  As the Second Circuit observed in the often-cited case of *Abraham v. Volkswagen of Am., Inc.*:

> All parts will wear out sooner or later and thus have a limited effective life. Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time.  Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to "know" that many parts will fail after the warranty period has expired.  A rule that would make failure of a part actionable based on such "knowledge" would render meaningless time/mileage limitations in warranty coverage.

795 F.2d 238, 250 (2d Cir. 1985).

---

[4]Without citing to any supporting authority, Perez contends that if a vehicle's automatic transmission system requires replacement within the first 150,000 miles of use, it cannot be considered merchantable by industry standards. *See, e.g.*, Doc. 1, para. 65.  Perez's vehicles did not experience transmission problems until they had been driven more than 100,000 miles each, yet she implausibly suggests that they "were just a few years old and had low miles—certainly, mileages well below what any reasonable consumer would expect to see in a vehicle requiring transmission replacement."  *Id.* at para. 18.

Indeed, there is nothing facially unconscionable about a five-year/60,000 mile warranty in the auto industry.  Warranties with even more restrictive terms have been approved by many courts. *See, e.g., Smith v. Ford Motor Co.*, 462 Fed. Appx. 660, 663 (9th Cir. 2011) (three-year/36,000 mile warranty not unconscionable); *Moore v. Coachmen Indust., Inc.*, 499 S.E.2d 772 (N.C. Ct. App. 1998) (twelve-month/15,000 mile warranty not unconscionable); *Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d 942 (Ill. App. Ct. 2005) (three-year/36,000 mile warranty not unconscionable); *Hornberger v. General Motors Corp.*, 929 F. Supp. 884 (E.D. Pa. 1996) (three-year/36,000 mile warranty not unconscionable); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145 (C.D. Cal 2010) (three-year/36,000 mile warranty not unconscionable); *Alban v. BMW of N. Am., LLC*, 2011 WL 900114 (D. N.J. March 15, 2011) (four-year/50,000 mile warranty not unconscionable); *Suddreth v. Mercedes-Benz, LLC*, 2011 WL 5240965 (D. N.J. Oct. 31, 2011) (four-year/50,000 mile warranty not unconscionable); *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 2012 WL 1574301 (D. N.J. May 3, 2012) (three-year/36,000 mile warranty not unconscionable); *Nelson v. Nissan North Am., Inc.*, 2012 WL 3920626, *5 (D. N.J. Sept. 7, 2012) ("First, there is nothing substantively unconscionable or unreasonable about a 5 year/60,000 mile warranty.").

As the Warranty in the case at bar meets industry standards and, in the Court's view, was not unconscionable, it is clear that Perez was not covered under the Warranty.  Her express warranty claim must therefore be dismissed.

## 2. Count II: Breach of Implied Warranty of Merchantability

Arkansas law permits a merchant to limit an implied warranty of merchantability.  Ark. Code Ann. §§ 4-2-314, 4-2-316.  Here, according to the plain terms of Defendant's express Warranty, the

implied warranty of merchantability applicable to Perez's vehicles "is limited in duration to the period of this written warranty." (Doc. 14-3, p. 9). As discussed above, the written Warranty expired prior to the time Perez became the owner of her two vehicles. Since the implied warranty's duration is equal to the written Warranty's, the implied warranty also expired.

Even if the express language of the Warranty had not limited the term of the implied warranty on Perez's vehicles, Arkansas law imposes a four-year statute of limitations on all implied warranties, beginning on the date of tender of delivery. Ark. Code Ann. § 4-2-725. Both Vehicle 1 and Vehicle 2 were manufactured in 2004 and tendered for delivery to their original owners that same year. Therefore, under any interpretation of law, no implied warranty of merchantability existed eight years later in 2012, when Perez became the owner of Vehicle 1, or six years later in 2010, when she became the owner of Vehicle 2. The implied warranty of merchantability claim must be dismissed.

### 3. Counts III - IV: Strict Liability for Design Defect and Defective Manufacture

In Arkansas, a supplier of a product is liable under a strict liability theory if (1) the product was supplied in a defective condition which rendered it unreasonably dangerous, and (2) the defective condition was the proximate cause of harm to person or property. Ark. Code Ann. § 4-86-102. Arkansas law accordingly requires a plaintiff to "prove that the product in question was in a defective condition at the time it left the hands of the particular seller." *Campbell Soup Co. v. Gates*, 319 Ark. 54, 59 (1994). Here, Perez alleges that her vehicles had a latent defect that caused the transmission systems to fail and require replacement prematurely.

The Arkansas Supreme Court has held that in order to demonstrate liability on the basis of circumstantial evidence, the plaintiff "must negate the other possible causes of failure of the product

for which the defendant would not be responsible in order to raise a reasonable inference that the dangerous condition existed while the product was still in the control of the defendant." *Id.* "A plaintiff is no longer required to prove negligence in a strict liability claim but still must prove the product was defective so as to render it unreasonably dangerous, and that the defect was the cause of the injury." *Higgins v. Gen. Motors Corp.*, 287 Ark. 390, 391 (1985).

The Complaint states generally that "[d]uring the time that each of the Plaintiffs possessed their respective vehicles, they adhered to the required vehicle maintenance work and schedule." (Doc. 1, para 14). However, the Complaint does not include any information about the actions taken by prior owners of Plaintiffs' vehicles with respect to maintenance. Further, Defendant cites to public records that show that Perez's Vehicle 2 was sold to her with a salvage title after having been involved in not one, but two accidents. (Doc. 14-6). It follows that Perez can at best speculate as to how her vehicles were driven, maintained, repaired, or modified during the many years prior to the time she bought them. She states no facts in the Complaint which would lead the Court to conclude, as to either one of her vehicles, that she can "prove that the product in question was in a defective condition at the time it left the hands of the particular seller." *Campbell*, 319 Ark. 59.

Moreover, Perez's strict liability claim fails due to her inability to prove proximate causation, which is an essential element of the claim. Perez does not attempt to trace the chain of custody and ownership of her vehicles back to Defendant, which is significant because the transmission systems in Vehicles 1 and 2 both malfunctioned after more than 100,000 miles of driving by multiple previous owners. There are any number of plausible causes for the transmission failures, given these facts. Accordingly, Perez's strict liability claim must be dismissed.

-12-

### 4.  Count V: Negligence

To establish a claim for negligence under Arkansas law, a plaintiff must demonstrate that a duty of care was owed, the defendant breached that duty of care, and the breach was the proximate cause of the plaintiff's injuries.  *Branscumb v. Freeman*, 360 Ark. 171, 179 (2004).  As explained above with regard to Perez's strict liability claims, as the subsequent owner of her used vehicles, Perez is unable to show proximate causation of her injuries, as she alleges no facts in the Complaint regarding the use, maintenance, or repair of her vehicles during the years prior to her purchases.  She makes no statement as to other possible causes for the damage to her vehicles prior to the time she became the vehicles' owner, which was after the 2004 Warranty had expired.  Accordingly, without a valid showing of proximate causation, Perez's negligence claim must also be dismissed.

### 5.  Count VI: Violations of Arkansas Deceptive Trade Practices Act

When a person "suffers actual damage or injury as a result of an offense or violation" of the Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. § 4-88-113(f), a cause of action for liability may be brought for any "unconscionable, false, or deceptive act or practice in business, commerce, or trade," Ark. Code Ann § 4-88-107(a)(10).  Perez contends that Defendant violated the ADTPA when it knowingly advertised and sold her two vehicles that each contained latent transmission defects requiring repair and/or replacement prior to the expiration of the Warranty.  Perez claims she reasonably relied upon certain representations, omissions, and advertisements presented by Defendant in connection with the qualities, standards, characteristics, and/or attributes of Defendant's New Beetle automobile, and Perez now finds herself damaged due

to the diminished value of her vehicles.[5]  (Doc. 1-1, para. 87).

In particular, Perez contends that Defendant "made false representations as to the characteristics and benefits of the subject vehicles," "advertised the subject vehicles, touting the warranties purportedly covering the subject vehicles, all the while with the intent not to sell them as advertised," and "engaged in representations and omissions in connection with the advertising, marketing, and offering for sale of the subject vehicles . . . that are deceptive and unconscionable at common law" in violation of Ark. Code Ann. § 4-88-107(a)(1), (a)(3), and (a)(10).  (Doc. 1-1, para. 87).

Federal Rule of Civil Procedure 9(b) requires any plaintiff claiming fraud to plead with particularity the circumstances constituting fraud.  The Court observes that Rule 9(b)'s pleading standard applies with equal force to state consumer fraud statutes as to common law fraud claims.  *In re General Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F.Supp. 1525, 1536 (E.D. Mo. 1997), *aff'd*, *Briehl v. GMC*, 172 F.3d 623 (8th Cir. 1999); *Pruitt v. Southwestern Energy Co.*, 2013 WL 588998, at *5 (E.D. Ark. Feb. 13, 2013); *Whatley v. Reconstrust Co. NA*, 2010 WL 4916372, at *6 (E.D. Ark. Nov. 23, 2010).  This pleading standard "demands a higher degree of notice than that required for other claims.  The claim must identify who, what, where, when, and how."  *United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003).  "Rule 9(b) is to be read in the context of the general principles of the Federal Rules, the purpose of which is to simplify

---

[5]Perez also pleads that she and the members of the class she seeks to represent incurred significant out-of-pocket costs in transmission repairs and associated expenses; however, Perez states in paragraph five of the Complaint that the repair estimate for Vehicle 1 was $4,000—not that she actually repaired the vehicle at that cost.  She further states that Vehicle 2 was placed in a garage and parked after the alleged transmission defect rendered it unusable; however, she never asserts that she took Vehicle 2 to a mechanic to be diagnosed for transmission defects or paid any amount of money to make repairs.  It is therefore unclear to the Court if Perez incurred any out-of-pocket costs associated with the repair of her vehicles.

pleading." *Id.*  The reason for requiring particularity in pleading for fraud claims, such as those established under the ADTPA, is "to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *Id.*

Beginning with Perez's false representations and false advertising claims, the Court observes that at no point in the Complaint does Perez specify what false representations were affirmatively made to her by Defendant, nor does she state that she relied on particular false representations *in making the decision to purchase her vehicles*.  This pleading failure renders Perez's ADTPA claims subject to dismissal.

Perez summarily maintains that Defendant should be held liable under the ADTPA for "any advertising that depicts the subject vehicles in a manner that leads the consumer to believe that they are of superior quality, design, or reliability," presumably because Perez's own vehicles required repair after multiple years of use, several prior owners, and more than 100,000 miles of driving. (Doc. 1-1, para. 88).  Perez further contends, again, without reference to any particular advertising, statement, or campaign conducted by Defendant, that Defendant set out "to assure the public falsely that there was no cause for concern about the quality of manufacturing and assembly of the Volkswagen New Beetle in Mexico, even when Volkswagen of America knew that this was not true because it was receiving numerous complaints about defects in the components of the same vehicles, including their transmissions."  (Doc. 1, para. 36).  Perez cites to a  news article entitled "Defining the American Car," dated July 26, 2003, in which Defendant purportedly responds to "public concern over the quality of the New Beetle's assembly" by reassuring consumers that assembly in Mexico

yields vehicles that are "comparable" to the vehicles built by Defendant in Germany.   *Id.* at para. 37.[6]

Taking Perez's claims in turn, the Court finds that her complaints about Defendant's general advertising of the New Beetles' superior quality, design, and reliability do not meet Rule 9(b)'s requirements for pleading fraud with particularity.  Perez appears to object to all positive advertising and branding of the New Beetle by Defendant.  Such objections are too generic to provide enough information to allow Defendant to respond specifically and quickly to her allegations of fraud, and they do not meet the pleading standards of *Iqbal* and *Twombly*.  Furthermore, Defendant's alleged "campaign" to diffuse criticism about its decision to manufacture vehicles in Mexico, if anything, must be construed as evidence of Defendant's openness as to its manufacturing procedures, rather than its concealment of such.  According to the date of the article attached to the Complaint, Defendant confirmed to the public that it was building its New Beetles in Mexico approximately nine years before Perez decided to purchase Vehicle 1 and seven years before Perez decided to purchase Vehicle 2.  Perez may only claim a violation of the ADTPA if she suffered economic injury "as a result" of her reliance on Defendant's allegedly false representations or advertisements.  Ark. Code Ann. § 4-88-113(f).  Clearly, none of the representations and advertisements she cites in the Complaint may be construed as the cause or causes of her particular injuries.

Finally, although Perez claims that Defendant made advertisements touting the New Beetle's various warranties, Perez cannot plausibly claim that she relied on such advertisements in making

---

[6]In the Court's view, this article cited by Plaintiffs and attached as an exhibit to the Complaint would tend to caution, rather than encourage, the average consumer as to the quality of the New Beetle.  The article, which was published the year before Perez's two New Beetles were manufactured, essentially criticizes Defendant's decision to assemble some of its vehicles in Mexico rather than Germany, and implies that assembly in Mexico is undesirable.  Far from concealing this fact, Defendant appears to have admitted it in the text of the attached article.

her purchasing decisions.  This is because, as discussed above, it is unreasonable for Perez to have relied on Defendant's clearly expired Warranty in purchasing either of her vehicles, and thus, any advertisement touting the Warranty could not have led to Perez's injuries.

The only ADTPA claim remaining is Perez's fraudulent omissions/fraudulent concealment claim.  The gist of this claim is that Defendant fraudulently concealed the latent defect in the New Beetles' transmission systems from Perez and other consumers.  Defendant correctly points out that the ADTPA has a statute of limitations period of five years, which would appear to preclude Perez from making her ADTPA claim eight years after the original date of manufacture of both of her vehicles.  Ark. Code Ann. § 4-88-115.

Perez asserts that Defendant had knowledge of a transmission defect in its New Beetle automobiles at the time of manufacture and actively concealed this fact, and that Perez relied on Defendant's omission/concealment of the defect when making the decision to purchase both of her vehicles.  Perez provides no details as to which individuals employed by Defendant concealed knowledge of the alleged defect, when such concealment occurred, or how Defendant's "campaign to fraudulently conceal" was carried out.  As evidence of Defendant's knowledge of the defect, Perez can only point to Defendant's 2010 offer to extend the warranty on the valve body, which does not demonstrate Defendant's knowledge of the defect in 2004, the date Perez's vehicles were manufactured.

It is black letter law that "when a failure to speak is the equivalent of fraudulent concealment, the law imposes a duty to speak rather than remain silent."  *Badger Capital, LLC v. Chambers Bank of North Arkansas*, 650 F.3d 1125, 1130 (8th Cir. 2011) (internal quotations and citations omitted).  One owes the duty to disclose information only when there is an established relationship between

the parties, such as a contractual relationship or a fiduciary relationship. *Id.* (citing *Berkeley Pump Co. v. Reed-Joseph Land Co.*, 279 Ark. 384, 387 (1983)). "Arkansas courts appear to require the existence of some type of relationship or contact between the parties before they conclude that special circumstances exist." *Id.* at 1131. Accordingly, even if Perez had made an adequate showing that Defendant knew or should have known of a latent defect in the transmission systems of her vehicles, it is clear that there was no privity of contract at any time between Defendant and Perez, and no confidential or fiduciary relationship exists or existed between them. Without any basis for imposing on Defendant a duty to disclose any alleged defect to Perez, no fraudulent omissions or fraudulent concealment occurred. All of Perez's ADTPA claims must therefore be dismissed for the reasons discussed above.

### B. Venue

Now that the Court has determined that all of Arkansas Plaintiff Perez's claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), the question of the Court's continuing jurisdiction over the claims of the remaining Plaintiffs must be considered. The basis for the Court's jurisdiction in this matter is diversity of citizenship pursuant to 28 U.S.C. § 1332, as Plaintiffs are citizens of Arkansas, Tennessee, Ohio, Illinois, California, Georgia, Texas, Connecticut, and Maryland; and Defendant is a citizen of Delaware, Virginia, and possibly Michigan. Perez is without standing to pursue claims on behalf of any putative class members. *Warth*, 422 U.S. at 502. Dismissing her from this action means that the Court is left with only the common law and state law claims of the eight out-of-state Plaintiffs.

According to 28 U.S.C. § 1407(b), a civil action may be brought in (1) a judicial district in which any defendant resides, (2) a judicial district in which a substantial part of the events or

omissions giving rise to the claim or claims occurred, or, if there is no district in which an action may otherwise be brought, (3) any judicial district in which any defendant is subject to a court's personal jurisdiction.  In this case, Defendant resides outside of Arkansas.  None of the claims made by the remaining Plaintiffs were occasioned by events that occurred in Arkansas.  Therefore, it is clear that the Western District of Arkansas is not the proper venue for the claims remaining in this case, which arise under eight other states' consumer protection and consumer fraud laws.  The remaining state claims in this action may otherwise be brought in one or more state courts in which the remaining Plaintiffs reside or a federal court where venue and jurisdiction are otherwise proper. Indeed, the courts of those states would be better equipped to adjudicate matters arising under their states' laws.

## IV.  Conclusion

For the above reasons, IT IS HEREBY ORDERED THAT  Plaintiff Perez's claims are dismissed with prejudice for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6); and the claims of Plaintiffs Perritt, Gunn, Vavpotic, Johnson, Jeffries, Hrachovy, Arthur, and Harman are dismissed without prejudice due to lack of proper venue, pursuant to 28 U.S.C. § 1406(a).

IT IS FURTHER ORDERED THAT Defendant's Motion to Dismiss (Doc. 14) is GRANTED, and this case is dismissed.  Judgment will enter contemporaneously herewith.

IT IS SO ORDERED this 17th day of April, 2013.

/s/ P. K. Holmes, III

P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE

-19-